UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RICHARD PEARCY, ET AL.     CIVIL ACTION NO. 02-2257

versus     JUDGE HICKS

UNITED STATES OF AMERICA     MAGISTRATE JUDGE HORNSBY

_____

**REPORT AND RECOMMENDATION**

**Introduction**

Richard and Joie Pearcy ("Plaintiffs") are the parents of the infant Alexander Myles Pearcy, who died on October 7, 2000, shortly after his birth at Christus Schumpert Medical Center in Shreveport, Louisiana. Both Plaintiffs were active duty members of the United States Air Force during Mrs. Pearcy's pregnancy, and Mrs. Pearcy received prenatal medical care from an Air Force physician. They allege that Alexander's death was caused by medical malpractice committed by the Air Force physician. They filed this action against the United States pursuant to the Federal Tort Claims Act ("FTCA"). Plaintiffs seek damages for the child's pain and suffering before his death (survival action) as well as their own damages (wrongful death claims).

Before the court is a Motion to Dismiss filed by the United States. Doc. 17. The United States argues that Plaintiffs' *wrongful death* claims are barred by the Feres doctrine.[1] In Feres v. United States, 340 U.S. 135 (1950), the Supreme Court held that when Congress enacted the FTCA, Congress did not intend for the Act's remedies to apply to a person who sustained an injury incident to military service. In its motion to dismiss, the United States argues that, because Plaintiffs were active duty members of the United States Air Force and their injuries were incident to their military service, the court lacks subject matter jurisdiction over Plaintiffs' wrongful death claims. For the reasons that follow, it is recommended that the Motion to Dismiss be granted and that Plaintiffs' wrongful death claims be dismissed for lack of subject matter jurisdiction.

**Plaintiffs' Allegations**

Plaintiff Joie Pearcy discovered she was pregnant on or about March 27, 2000. Complaint, ¶ 7. She sought and received prenatal care from Maj. Elisa L. Brown, M.D. and others at the OB/GYN clinic at Barksdale Air Force Base in Bossier City, Louisiana.

---

[1] Plaintiffs point out in their Opposition to Defendant's Motion to Dismiss that the motion does not seek dismissal of Plaintiffs' survival action (which seeks recovery for the damages suffered by their son from birth to the moment of his death). According to Plaintiffs, the motion seeks dismissal only of Plaintiffs' wrongful death claims (which seek damages suffered by them as a result of the death of their son). It appears from a review of the motion and supporting brief that Plaintiffs are correct on this point. Furthermore, Defendant has not filed a reply challenging Plaintiffs' characterization of the motion. Accordingly, the court will construe the motion to dismiss as a motion for *partial* dismissal.

On October 6, 2000, at 31 weeks gestation, Joie Pearcy began to experience abdominal pain and/or cramps, which started at approximately 3:00 a.m. Complaint, ¶ 8. She telephoned the base clinic, but no one answered. She called again later that morning and spoke to someone she believed was a civilian employee of the clinic. That employee advised Joie Pearcy that she was experiencing false labor pains and instructed her to report to work on base. Joie Pearcy's request to see a physician was denied. Complaint, ¶ 11.

Joie Pearcy reported to work but, later that morning, her pain and/or cramps continued, so she reported those facts to her supervisor. She was instructed to go home, which she did in the late morning of October 6, 2000. Complaint, ¶ 14. After she returned home, her membranes ruptured spontaneously with a gush of fluid. Complaint, ¶ 15. She immediately called the base clinic and was advised to go directly to Christus Schumpert Medical Center in Shreveport, Louisiana, to be admitted to the labor and delivery floor. Complaint, ¶ 16. Joie Pearcy was admitted to Christus Schumpert at approximately 2:00 p.m. on October 6, 2000. It was determined she was experiencing pre-term labor, which could not be treated due to the earlier spontaneous rupture of her membranes. Complaint, ¶ 17.

Dr. Brown did not see Joie Pearcy in the hospital until 2:45 p.m. on October 6, 2000. By that time, Joie Pearcy was fully dilated and the baby was in a complete breech position and engaged low in the pelvis. Complaint, ¶ 23. Joie Pearcy was taken to the operating room at 2:55 p.m., placed under general anesthesia and prepped for a Caesarian delivery.

Complaint, ¶ 23. Dr. Brown performed a low, cervical transverse incision, and the baby, named Alexander Pearcy, was delivered with great difficulty at 3:15 p.m.

Alexander Pearcy was bruised and traumatized by the slow delivery process, causing his condition to be compromised. Complaint, ¶ 25. After delivery, his care and treatment were turned over to Dr. Carolyn Robinson, a non-military neonatalogist. ¶ 26. Despite aggressive treatment and therapies offered by Dr. Robinson and the staff of Christus Schumpert, Alexander Pearcy died at approximately 4:00 p.m. on October 7, 2000 from complications of his traumatic and delayed birth. Complaint, ¶ 26.

Plaintiffs allege the United States was negligent in: (a) failing to provide patients with 24-hour access to an obstetrician; (b) staffing the base clinic with persons who were unqualified to triage patient complaints or concerns received by telephone; (c) failing to provide Joie Pearcy and her unborn baby with appropriate follow up medical care when signs and symptoms consistent with pre-term labor were noted on October 2, 2000; and (d) failing to take the necessary steps to diagnose, treat and attempt to arrest Joie Pearcy's pre-term labor before rupture of her membranes. Plaintiffs allege that, as a result of that negligence, Pearcy's pre-term labor was not arrested and her baby lost a significant chance of survival. Complaint, ¶¶ 18-19.

Plaintiffs further allege that Dr. Brown was negligent in:

a. Failing to recognize that the fastest way to deliver a breech baby low in the pelvis is to make a vertical, midline incision in the abdomen as opposed to a low, transverse incision;

> b. Failing to make a low vertical midline incision in the uterus before attempting to deliver the baby;
>
> c. Failing to recognize and stop the application of excessive force on the body of Alexander Pearcy during the Caesarean section delivery;
>
> d. Failing to administer or order the administration of medications which would have relaxed the contracted uterus around the fetal head;
>
> e. Failing to perform Caesarean section delivery in a timely and appropriate fashion; and
>
> f. Failing to protect Alexander Myles Pearcy from a reasonably foreseeable risk of injury and death.

Plaintiffs allege that, as a result of the negligence and substandard medical care, Alexander Pearcy suffered serious, physical injuries and ultimately died. Complaint, ¶ 28.

As mentioned, Plaintiffs assert two distinct claims. First, they assert a survival action seeking to recover general damages for the physical pain and suffering and emotional pain and suffering experienced by Alexander Pearcy before his death. Complaint, ¶ 29. Second, they bring wrongful death claims seeking to recover for their own loss of love, affection and consortium, including their own emotional pain and suffering experienced as a result of the death of Alexander Pearcy. They also seek a special damage award for funeral expenses. Complaint, ¶ 30. Plaintiff allege they submitted their claims to the Office of Staff Judge Advocate, but their claims were denied. Complaint, ¶ 31.

**The Feres Doctrine**

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), permits the United States to be sued in federal district courts for the negligent or wrongful acts of its employees.

The FTCA is a limited waiver of the sovereign immunity of the United States and has been strictly construed in favor of the United States. Vernell v. United States Postal Service, 819 F.2d 108, 111 (5th Cir.1987). The Supreme Court has articulated an exception to the FTCA waiver of immunity, referred to as the "Feres doctrine," holding that the Government is not liable under the FTCA for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service. Feres, 340 U.S. at 146. See also Parker v. United States, 611 F.2d 1007 (5th Cir. 1980); Schoemer v. United States, 59 F.3d 26 (5th Cir. 1995).

In United States v. Shearer, 473 U.S. 52, 57 (1985), the Supreme Court reaffirmed the Feres doctrine, but instructed courts to take a case-by-case, rather than *per se* approach to claims for immunity: The Feres doctrine cannot be reduced to a few bright-line rules; each case must be examined in light of the statute as it has been construed in Feres and subsequent cases. See Hayes v. United States, 44 F.3d 377, 378 (5th Cir. 1995).

In United States v. Johnson, 481 U.S. 681 (1987), the Court again reaffirmed Feres, and it applied the doctrine to bar the claim of a widow of a Coast Guard pilot who was killed while performing a rescue mission on the high seas. The widow sought damages from the United States based on the alleged negligence of FAA flight controllers who had assumed positive radar control over the pilot's helicopter. She attempted to avoid application of Feres on the grounds that the alleged tortfeasor was not a member of the military. The district court applied Feres and dismissed the complaint. The Eleventh Circuit reversed, finding that although the Supreme Court had articulated numerous rationales for the Feres doctrine, the

effect of a suit on military discipline was the doctrine's primary justification. The widow's claims directed at the fault of the civilian flight controllers did not undermine the military's authority to maintain discipline, so the appellate court was willing to permit the claims to be prosecuted.

The Supreme Court disagreed with the suggestion that the military status of the alleged tortfeasor is crucial to the application of the doctrine. The Court also emphasized each of the three broad rationales underlying the Feres decision. The first rationale is the "distinctively federal" character of the relationship between the Government and members of its armed forces. That relationship is implicated to the greatest degree when a service member is performing activities incident to his federal service. Id. at 689. The second rationale is the existence of "generous statutory disability and death benefits." Id. Those injured during the course of activity incident to service not only receive benefits that compare favorably with those provided by most worker's compensation statutes, but the recovery of benefits is swift and efficient. Id. The third rationale is that suits brought by service members against the Government for injuries incurred incident to service are the types of claims that would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness. Suits brought by service members against the Government for service-related injuries could undermine the commitment essential to effective service and thus have the potential to disrupt military discipline in the broadest sense of the word. Id. at 691.

**Analysis**

In arguing that Plaintiffs' wrongful death claim is barred by the Feres doctrine, Defendant cites Scales v. United States, 685 F.2d 970 (5th Cir. 1982), which was decided five years before Johnson. Scales involved an allegation of "wrongful birth". An infant, through his mother, sued the United States alleging he was born with congenital rubella syndrome as a result of negligent medical treatment his mother received during her basic training for service in the Air Force. The Fifth Circuit reviewed the three policy rationales under the Feres doctrine. First, because the FTCA requires the law of the state where the act or omission occurred to govern liability, it would be inconsistent with the distinctly federal nature of the relationship between the federal government and its servicemen to make the government's liability dependant upon the fortuity of where the soldier happened to be stationed at the time of his injury. Second, Congress provided a special remedy for servicemen in passing the Veterans' Benefits Act which creates a no-fault compensation scheme as a substitute for tort liability and limits the government's liability for service related injuries. Allowing a tort claim under the FTCA could circumvent the limitation established by the Act and judicially admit at the back door that which has been legislatively turned away at the front door. Third, and, according to the Fifth Circuit, most important, is the concern for preserving military discipline.

According to the Fifth Circuit, the need to preserve military discipline, standing alone, can justify dismissal of suits arising out of activities incident to military service even when

there was no command relationship between the claimant and the individual tortfeasor. Scales, 685 F.2d at 972-973. According to the Fifth Circuit:

> The policies that support the Feres doctrine clearly would preclude Charles' mother from bringing suit against the United States based on the negligent medical treatment she received while on active duty in the Air Force. Two of the claims rejected in Feres were based on allegations of medical malpractice. Moreover, this court has held repeatedly since Feres that claims based on medical malpractice fall within the bounds of the Feres doctrine when the plaintiff was a serviceman on active duty at the time of the alleged malpractice.

Id. at 973. Thus, Ms. Scales's claim was barred by Feres.

Plaintiffs argue that Scales should not be controlling because it was decided prior to the Supreme Court's decision in United States v. Johnson, supra, which de-emphasized the military discipline component of the Feres doctrine. According to Plaintiffs, the Fifth Circuit in Scales relied exclusively on the third factor (suit would impair military discipline) and essentially overlooked the other two Feres factors. According to Plaintiffs, had the Fifth Circuit in Scales applied all three factors, it is likely the court would have found that the infant, unlike his military mother, did not have a distinctively federal relationship with the government and that the government had failed to identify any statutory benefits to which the infant child would have been entitled. According to Plaintiffs, such a determination by the court would have prompted it to conclude the infant's claim was not barred by Feres.

The court need not second guess the Fifth Circuit's analysis in Scales to resolve Defendant's motion. Defendant is not seeking dismissal of the survival action, which seeks damages suffered by the infant from the moment of his birth to the moment of his death.

Defendant seeks only dismissal of Plaintiffs' wrongful death claims. As shown below, application of the Feres doctrine to Plaintiffs' wrongful death claims in this case is straightforward. Indeed, the Fifth Circuit *requires* application of the Feres doctrine to medical malpractice claims when the serviceman was on active duty at the time of the alleged malpractice. United States v. Schoemer, 59 F.3d at 29 fn. 2 (5th Cir. 1995).

A case factually similar to the instant case is Del Rio v. United States, 833 F.3d 282 (11th Cir. 1987). Ms. Del-Rio, an active duty servicewoman, sought prenatal care at a military facility. She claimed she went into premature labor due to the failure of the medical center staff to take into account her complications and treat her accordingly. Attempts to stop her premature labor were unsuccessful, and she gave birth by Caesarian section to twin children. She alleged that, as a result of the negligent prenatal care, one child suffered bodily injury and the other child lived only five days. She filed suit seeking damages for her personal injuries. In addition, she sought to recover injuries as guardian for her injured son. She also sought wrongful death damages as personal representative of the estate of her deceased son.

The Eleventh Circuit found that the rationale underlying the Feres doctrine precluded Ms. Del Rio's suit for the alleged negligent prenatal treatment she received while on active duty. Ms. Del Rio's active military status permitted her to seek prenatal care at the military hospital. Therefore, the medical treatment administered to her was incident to her military service. The second Feres factor also was implicated because the Ms. Del Rio will continue to receive medical treatment by the government for any injury sustained which is incident to

service.  With regard to the third factor, the court found it was clear that a medical malpractice suit against active-duty military physicians would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness.

Even though Ms. Del Rio's personal injury claim was barred by Feres, she argued that her children's claims should not be barred because their claims were independent and not derived from their military-mother's injury.  Relying on the Fifth Circuit's decision in Scales, the district court held that Feres barred the children's claims because the medical treatment administered to the twins was inherently inseparable from the medical care rendered to plaintiff.  The Eleventh Circuit noted that the Scales court relied almost exclusively on the rationale that the maintenance of the suit would impair military discipline, and the continuous evolution of the Feres doctrine, especially by the Supreme Court's decision in Johnson, now requires application of all three factors of the Feres decision.

Application of the three factors to the claims of the injured infant in Del Rio indicated the maintenance of the infant's personal injury claim would not circumvent the purposes of the FTCA.  According the Eleventh Circuit: "The three Feres rationales clearly are not present in a suit by the child of a service person for the negligence of military medical staff."  Id. at 287.  First, the child did not have a distinctively federal relationship with the government.  The civilian child whose parent is a member of the service hardly bears the same relationship to government as that of a soldier on duty.  Second, the government failed to identify any statutory benefits to which the injured infant was entitled.  Third, while a suit by the injured child may require the same type of inquiry into the physician's decisions as the

suit by plaintiff, military discipline was not implicated to the same degree. Thus, consideration of the three factors weighed in favor of permitting plaintiff to maintain the claims against the government on behalf of her injured child.

With regard to Ms. Del Rio's wrongful death claim for her own damages based on the death of her other son, the Court found that claim barred by Feres. Under Florida law, a wrongful death action is not derivative in a technical sense because it awards damages suffered by the parent independently of any right of action in the deceased minor. The nature of Ms. Del Rio's claim was to obtain relief from the death of her minor child. Therefore, her wrongful death claim was barred by Feres.

In this case, Plaintiffs attempt to distinguish Del Rio by arguing that the tort victim in this case is Alexander Pearcy, their minor child, and not them. They claim they are not suing for their own injuries. Rather, they argue they are suing for the general damages caused by the death of their infant son. Plaintiffs ask the court to examine closely Plaintiffs' duty status and the activity Plaintiffs were engaged in when the death of their infant son occurred. According to Plaintiffs, "they were both in a private hospital, prayerfully watching over their son, who was in a bed in the neonatal intensive care unit, when he took his last breath." Plaintiffs' Memorandum of Law, p. 9.

Although there is some obvious sympathetic appeal to Plaintiffs' argument, it is legally unpersuasive and contradicted by their own pleadings. In articulating their wrongful death claims in paragraph 30 of their Complaint, Plaintiffs state:

> "Joie Pearcy and Richard Pearcy also bring wrongful death actions and are entitled to recover general damages for <u>their</u> respective loss of love, affection, and consortium, including <u>their own</u> emotional pain and suffering, experienced as a result of the wrongful death of their minor son, Alexander Myles Pearcy, along with a special damage award for funeral expenses." [Emphasis added.]

Thus, Plaintiffs asserted wrongful death claims seeking recovery for their own injuries. Indeed, that is the precise nature of a wrongful death claim under Louisiana law. In <u>Taylor v. Giddens</u>, 618 So. 2d 834, 840 (La. 1993), the Louisiana Supreme Court explained:

> Although both actions arise from a common tort, survival and wrongful death actions are separate and distinct. <u>Guidry v. Theriot</u>, 377 So.2d 319 (La.1979). Each right arises at a different time and addresses itself to the recovery of damages for totally different injuries and losses. *Id.* The survival action comes into existence simultaneously with the existence of the tort and is transmitted to beneficiaries upon the victim's death and permits recovery only for the damages suffered by the victim from the time of injury to the moment of death. *Id.* It is in the nature of a succession right. Comment, <u>Wrongful Death: Prescription? Peremption? Confusion!</u> 39 La. L. Rev. 1239, 1249 (1979). On the other hand, the wrongful death action does not arise until the victim dies and it compensates the beneficiaries for their own injuries which they suffer from the moment of the victim's death and thereafter. <u>Guidry v. Theriot</u>, <u>supra</u>. Wrongful death damages compensate beneficiaries for their own injuries.

**Conclusion**

After carefully examining all of the <u>Feres</u> factors, the allegations of the Complaint and the parties' briefs, the court concludes that Plaintiffs' wrongful death claims are barred by <u>Feres</u>. Plaintiffs were active duty members of the military. Their status entitled Joie Pearcy to seek prenatal medical care at the base medical clinic and, via a contractual relationship, the private hospital in Shreveport. Thus, the medical treatment rendered to Joie Percy was incident to her military status. Furthermore, the physician in this case is Major Elisa L. Brown, M.D., who Plaintiffs admit was practicing OB/GYN at the base clinic as a member

of the 2d Medical Group. Complaint, ¶ 5. The medical treatment at issue, therefore, was provided pursuant to Major Brown's military status. The distinctively federal relationship among these parties is substantially impacted by the facts alleged in this case.

Additionally, maintaining the parents' wrongful death claims would put the court in the position of second-guessing the medical decisions of the military physicians with respect to treatment rendered to another member of the military and could impair military discipline. While Defendant has not pointed to any benefits that are otherwise available to Plaintiffs to compensate them for their own damages, the weight of the other factors compels the conclusion that Plaintiffs' wrongful death claims fall within the heart of the Feres doctrine and should be dismissed for lack of subject matter jurisdiction. See Stanley v. CIA, 639 F.2d 1146, 1157 (5th Cir. 1981)(dismissal for lack of subject matter jurisdiction is appropriate when Feres bars claim). As pointed out above, Plaintiffs' survival action was not addressed in Defendant's motion, so that claim should continue in this litigation.

Accordingly,

**IT IS RECOMMENDED** that the Government's Motion to Dismiss (Doc. 17) be **GRANTED** and that Plaintiffs' claims for alleged wrongful death of their infant son be **DISMISSED** for lack of subject matter jurisdiction under Feres. Plaintiffs' survival action should remain in the lawsuit.

**Objections**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ. Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and

recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed.R.Civ.P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this the 29th day of August, 2005.

                                                   MARK L. HORNSBY
                                        UNITED STATES MAGISTRATE JUDGE

cc: Judge Hicks